**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:25CR622 |
| Plaintiff, | : | |
| | : | JUDGE DAVID A. RUIZ |
| vs. | : | |
| | : | **RICARDO WILLIAMS' SENTENCING MEMORANDUM** |
| RICARDO WILLIAMS, | : | |
| Defendant. | : | |

Ricardo Williams submits this sentencing memorandum in support of his objection to the presentence report (PSR) and in support of his request for a 54-month sentence. Mr. Williams specifically objects to the PSR's offense level calculation, arguing that the correct advisory guideline range is 63 to 78 months (total offense level 25, criminal history category II). The PSR includes amphetamine that was excluded from the plea agreement and also ignores any personal-use substances versus for-sale substances. Further, Mr. Williams's sincere contrition, family support, history and characteristics, and Section 3553(a) factors support a below-guideline sentence of 54 months.

**I. The correct base offense level is 24, and the plea agreement reflects this. Further, Mr. Williams' addiction and his personal use is a mitigating Section 3553(a) factor.**

The Court should adopt the offense level calculation in the plea agreement because the correct base offense level is 24. First, the parties negotiated the plea agreement in good faith. While it appears from the government's response to the PSR's calculation that the government inadvertently left out amphetamine, the government also indicated that it would respect the signed agreement. Mr. Williams asks this Court also to honor the signed agreement's stipulated offense level calculation. On this basis alone, the Court should calculate the base offense level to be 24,

and the total offense level to be 25. Second, the court could find a correct base offense level of 24 by recognizing that there are personal use quantities in this case, and that such personal use quantities are not part of the relevant conduct. The PSR does not address this, and therefore it overcalculates the base offense level.

A district court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007) (citation omitted). In a sentencing case driven primarily by Guideline Section 2D2.1, the court must determine what drug quantities are considered part of the relevant conduct of the offense. *See United States v. Tullock*, 578 F. App'x 510, 514–515 (6th Cir. 2014) (citations omitted) (providing guidance to the district court on remand to make factual findings regarding which portion of oxycodone pills were for defendant's personal use.); *United States v. Gill*, 348 F.3d 147, 151–153 (6th Cir. 2003) (holding that simple possession of drugs for persona use is not relevant to possession with intent to distribute); *See also United States v. Wilson*, 17 F.4th 994, 1002 (10th Cir. 2021) (citing *Gill*, 348 F.3d at 153). Here, the parties agreed that base offense level was 24 and total offense level was 25. That is the correct calculation. Based upon the plea agreement, this Court should agree.

Further, drugs possessed for personal consumption are not "part of or connected to the commission of, preparation for, or concealment of" possession with intent to distribute. *See* USSG § 1B1.3; *Gill*, 348 F.3d at 153. The distinction is important. For this Court to properly calculate his advisory Guideline range, this Court must determine what drugs are part of the relevant conduct. Correctly looking at this case's relevant conduct results in the conclusion that the base offense level should be 24.

Here, it should be uncontested that Mr. Williams struggles with substance addiction. PSR, ¶¶ 84-87. Some of his addiction issues come from his history as a victim of violence. He has "been

stabbed and shot on multiple occasions." PSR, ¶ 82. As a teenager, he was shot in the leg because he dared to stand up to his mother's abusive boyfriend. PSR, ¶ 78. It was the boyfriend's nephew who ultimately pulled the trigger. *Id.* This also caused Mr. Williams to be unhoused, as he would avoid going home so as not to be around the abusive boyfriend. *Id.* His other injuries include being stabbed in the arm, taking a stray bullet to buttocks, pistol-whipped in the head, then stabbed again while in pretrial custody. PSR, ¶ 82.

Mr. Williams is not currently on opioids while in pretrial custody, but he was prescribed them and other muscle relaxers over the years. Like many, many others in Northeast Ohio and across the United States, Mr. Williams became addicted to the painkillers. *See, generally,* 1:17-MD-2804 National Prescription Opiate Litigation (N.D. Oh.). His pill use peaked in the six months leading up to his arrest. PSR, ¶ 86. Near the time of his arrest, he took eight to fourteen pills a day. *Id.* By his most conservative estimate, he used 1,440 pills. The stock bottles of oxycodone contain 100 doses each.

The number of pills he consumed over this period indicates a serious problem. It's one that he tried to treat twice before. He completed an outpatient substance treatment program at Murtis Tayor Human Services in 2018 and an intensive outpatient program in 2022 with Stella Maris. But in 2023 he relapsed due to grief over the passing of one of his friends.

To be clear, Mr. Williams fully and completely accepts responsibility for the drugs he sold and intended to distribute. Exhibit A, Letter from Recardo Williams. He agrees with the plea agreement's base offense level 24 based on this conduct, and he accepts responsibility in equal measure for the drugs that were found packaged for sale in plastic baggies. But he also needs, and asks this Court to help him receive, serious addiction treatment. PSR, ¶ 87.

The PSR calculates a total converted drug weight of 404.60 kg, which is slightly above the parties' agreed upon total converted weight of 100kg to 400kg. Treating the PSR's included 2.43 grams of amphetamine (4.86 kg of converted drug weight) as personal use amount, would result in the correct base offense of 24. Similarly, the substantial bulk of the drug quantities found in this case were oxycodone: 49.38 grams of the substance (330.85 kg of converted drug weight). If even less than one gram of the oxycodone found was for personal use (and therefore excluded from relevant conduct), then the total converted drug weight will be less than 400 kg, reflecting the correct base offense level of 24.

In short, Mr. Williams asks this Court to follow the plea agreement's agreed upon base offense level of 24. The court should also follow *Tullock* and *Gill* and account for Mr. Williams' personal use quantities. The correct total converted drug weight is less than 400 kg, with a base offense level 24. The correct guideline range is 63 to 78 months.

## II. Mr. Williams's personal history and characteristics and the nature and circumstances of the offense support his requested sentence.

The nature and circumstances of the instant offense largely involves oxycodone, fentanyl, and methamphetamine. Mr. Williams was an addict of substances, including oxycodone, fentanyl and codeine syrup. He requests treatment. In fact, supervision and treatment – as opposed to imprisonment – best serves Section 3553(a). Further, Mr. Williams does not have a history of serving time in custody. He is in criminal history category II, but prior to this case, the longest custodial sentence imposed on him was 12 months custody, imposed over a decade ago in 2013, when he was 20 years old. PSR, ¶ 36. For Mr. Williams, a 54-month custodial sentence is substantial.

Mr. Williams' upbringing and history are also mitigating. He grew up in a violent neighborhood largely without a father. PSR, ¶ 77 – 78. As early as seven years old he witnessed his first shooting. *Id.* At 17, he was shot for the first time. It wouldn't be the last.

Mr. Williams's father died of cancer when he was only five years old. PSR, ¶ 76. He was raised primarily by his mother and her parents. His mother eventually an abusive man by the name of Charles Brown. Mr. Williams witnessed him abuse his mother, and he was also victim of the abuse himself. Brown was more violent when he was intoxicated. Around age 17, Mr. Williams stood up to Brown for the first time. He was then shot in the leg by one of Brown's nephews. This caused him to avoid going home so that he could stay away from Brown. This was the first time he experienced being unhoused.

But Mr. Williams would remember these feelings when he became a father himself. He has one child, Ricardo Jr., who is six years old. Ricardo's mother, Abrielle Watts, has been with Mr. Williams since 2009. PSR, ¶ 79. Mr. Williams has worked hard to make sure they can make rent and provide basic necessities for his family. From 2016 through 202 he worked for King Nut in Solon, Ohio. Then he started his own appliance business, R&W Appliances. He has a registered remodeling company also in his name. Mr. Williams, by Abrielle's account, has been the father that he never had. Exhibit B: Letters. He would dress Ricardo Jr. for school and lay with him until he fell asleep at night.

The separation has been particularly hard on Ricardo Jr. He is just old enough to understand that his father is missing, but not old enough to understand why. Exhibit B. He is in sports but doesn't understand why his father isn't there like the other kids' fathers are. *Id.* Sharon Watts, Abrielle's mother, recognizes the work he put in to try to overcome his upbringing. *Id.* By her

account, he has been mostly successful. Unfortunately, Mr. Williams relapsed into addiction in 2023. He is resilient, but he just needs to be redirected. *Id.*

His older sister, Charmaine Walker, also recognizes the progress that Mr. Williams has made since becoming a father. He hasn't just helped his own family. "Ricardo believes in giving back to the community and has participated in efforts to provide hot meals and clothing donations to women's shelters and people in need. He has made it a point to show his son the importance of helping others and contributing positively to the community." Exhibit B.

In some ways, Mr. Williams has been a better father figure to his younger siblings than their father was. His sister, McKenzie Brown, remembers how he made her feel when she graduated high school. "He wanted me to feel proud of myself, and he showed up for me in every way—emotionally, financially, and as a role model."

Ricardo Williams rose above his beginnings and showed that he is determined to be a better father and better man than those around him when he was a child. In fact, in speaking with Mr. Williams, he emphasizes how important giving back to the community is to him. His family, too, speaks of his care of others. PSR, ¶ 80. Mr. Williams has donated to kids in the community, both time and money, and he is active in the youth football program. Further, he regularly donates food to the woman's shelter and homeless shelter. He would also take his son to volunteer with him at the shelter. He would donate blood during Red Cross drives. In short, Mr. Williams is a family-oriented, community-minded person.

But Mr. Williams is still human, and like all humans is complicated. He struggles with addiction to opioid medications. He needs access to treatment because addiction is a disease that fundamentally alters the brain and behavior. Principles of Drug Abuse Treatment for Criminal Justice Populations: A Research-Based Guide, p. 1, 15 – 16, published by the National Institute on

Drug Abuse. Mr. Williams has a real disease that requires real treatment, not just more time in forced abstinence. *See Id.*

His addiction changes the way he thinks and behaves, which leads to finding more ways to feed it. One way was by selling drugs in this case. He understands and accepts responsibility for his actions, but he has incredible community support in the incredible community he built around himself by trying to be better. Therefore, his history and characteristics support his requested sentence.

**III. Sentencing data support his requested sentence.**

The correct base offense level is 24. Therefore, his correct final offense level is 25 based on the applicable enhancements and his acceptance of responsibility. The Court is required to avoid unwarranted sentencing disparities before imposing a sentence. 18 U.S.C. 3553(a)(6). Courts are not required to look toward the Sentencing Commission's data to avoid disparities, but the Sixth Circuit has said "that district courts should look to Commission data when considering significant upward or downward variances." *United States v. Hymes*, 19 F.4th 928, 936 (6th Cir. 2021) (internal quotation and citations omitted).

"For the 24 defendants (96%) [with criminal history category II and final offense level 25] who received a sentence of imprisonment in whole or in part [under § 2D1.1], the average length of imprisonment imposed was 46 month(s) and the median length of imprisonment imposed was 46 month(s)." PSR, ¶ 124. A guideline range sentence would create unwarranted disparities between Mr. Williams's sentence and other similarly situated defendants across the country. A guidelines range sentence would be an above-average outlier. Even Mr. Williams's requested sentence is still greater than the median. He respectfully requests that this Court sentence him to 54 months imprisonment.

## IV. Conclusion

Mr. Williams's story is unfortunately common. He suffered several stabbings and shootings over his life and was prescribed opioid painkillers for the associated pain. He became addicted to the drugs, like so many people across the country. He turned to the streets to find substitutes when the prescriptions ran out. He started selling to support his habit. He knows that he did wrong and must pay the consequences for that. But his history has shown that with a little direction, and his determination, he can bounce back. With his incredible community support, he will. But in the meantime, this Court must sentence him. A 54-month sentence addresses the required sentencing factors, including the need for the sentence imposed to provide the defendant with rehabilitation treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2)(D).

Further, with imposition of a 54-month sentence, which is 9 months below the correct guideline range, Mr. Williams also respectfully suggests that the Court consider a longer-than-minimum term of supervised release to facilitate rehabilitation and treatment. Supervision and treatment better further Section 3553(a), as opposed to a Guideline custodial sentence.

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

*/s/ David E. Johnson*
DAVID E. JOHNSON
Assistant Federal Public Defender
Ohio Bar: 0081505
1660 West Second Street, Suite 750
Cleveland, Ohio 44113
(216) 522-4856 Fax: (216) 522-4321
e-mail address: David_Johnson@fd.org